LoFaro & Reiser, L.L.P.
20 Court Street
Hackensack, New Jersey 07601
(201) 498-0400
Attorneys for Plaintiff

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>ROBERT BONGIORNO,<br><br>   Debtor.<br><br>_____ | CHAPTER 7<br><br>Case No.:  18-16626 (CMG) |
| MERETE BOMMEN,<br><br>   Plaintiff,<br><br>vs.<br><br>ROBERT BONGIORNO,<br><br>   Defendant. | Adv. Pro. No.:<br><br>**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTING TO DEBTOR'S DISCHARGE PURSUANT TO SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE** |

Plaintiff, Merete Bommen, by and through her attorneys, LoFaro & Reiser, L.L.P., by way of Adversary Complaint against the defendant, Robert Bongiorno (the "Debtor"), says as follows:

## JURISDICTION AND VENUE

1. This is an Adversary Proceeding instituted pursuant to Fed. R. Bankr. P. 4004, Fed. R. Bankr. P. 4007(c), and Fed. R. Bank. P. 7001 seeking relief pursuant to 11 U.S.C §523(a)(2)(A), 11 U.S.C §523 (a)(2)(B), 11 U.S.C §523(a)(4), 11 U.S.C. §523(a)(6), 11 U.S.C. §727(a)(3), 11 U.S.C. §727(a)(4)(A), 11 U.S.C. §727 (a)(4)(D), and 11 U.S.C. §727(a)(5).

2.      Jurisdiction of this matter is conferred upon the United States District Court of the District of New Jersey pursuant to 28 U.S.C. §1334, and the Court's Standing Order of Reference dated July 23, 1984.

3.      This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(I), and 28 U.S.C. §157(b)(2)(J).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

5.      Plaintiff filed a timely proof of claim within the claims bar deadline of July 3, 2018.

6.      The initial deadline to challenge the Debtor's discharge and to determine dischargeability of debts was set for July 10, 2018.

7.      On July 11, 2018 the Court entered a Consent Order extending the objection deadlines to September 23, 2018.

8.      By Order entered on October 16, 2018, the Court extended the objection deadlines for Plaintiff to November 22, 2018.  Accordingly, this Complaint is timely.

9.      As of the date of this Complaint the Debtor has not been granted a discharge.

## FACTS COMMON TO ALL COUNTS

10.      The Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on April 3, 2018 (the "Petition Date").

11.      Plaintiff is an individual residing at 701 Pequot Place, Franklin Lakes, New Jersey.

12.      According to information maintained by the New Jersey Secretary of State, the Debtor is a principal and President of Star Management of New Jersey, Inc. ("Star Management"), a corporation of the State of New Jersey formed on December 1, 1999.

2

13.     Prior to the Petition Date, and at all relevant times Star Management maintained its principal place of business at 1067 Palisade Avenue, Fort Lee, New Jersey.

14.     Although Star Management's corporate charter remains "active", upon information and belief Star Management is insolvent.

15.     Prior to the Petition Date, and at all relevant times, the Debtor owned and operated Star Management for the primary purpose of targeting and defrauding individual lenders and investors with false promises of substantial interest rate returns as an inducement to loan money to the company.

16.     Upon information and belief, the Debtor operated Star Management as a Ponzi Scheme by luring investors such as the Plaintiff with false promises of substantial interest rate returns in exchange for loaning large sums of money to the company.

17.     Prior to the Petition Date, and at all relevant times, Plaintiff and her husband Jess P. Spota were close personal friends of the Debtor's parents Joan Bongiorno and Joseph Bongiorno, frequently taking family vacations and spending holiday dinners together. As a result of Plaintiff's close relationship with the Debtor's family, over the years the Debtor came to learn that Plaintiff and her husband enjoyed an affluent life style and maintained substantial assets.  As such, when Plaintiff became a widower the Debtor had intimate knowledge that she was financially secure.

18.     In early 2014 the Debtor solicited Plaintiff for a small business loan for Star Management. The Debtor expressly represented to Plaintiff that the money would be used exclusively by Star Management to fund its business operations, and promised Plaintiff a substantial rate of return - in excess of 20% of the loan amount.

19.     In reliance upon the representations and promises of the Debtor, Plaintiff agreed to loan Star Management the sum of $300,000.  Specifically, on March 20, 2014

3

Plaintiff issued a $300,000 check made payable to Star Management.  See **Exhibit 1**. At that time the Debtor assured Plaintiff that her loan would be memorialized in a formal promissory note.

20.     On April 1, 2014, the Debtor presented Plaintiff with a signed promissory note in the amount of $300,00, listing Star Management as obligor and Plaintiff as oblige.  Plaintiff's 300,000 loan was to be repaid at $500/month, representing a 2% per month interest rate, and provided Plaintiff with the option of accelerating the repayment of the entire loan to a 36-month period.  See **Exhibit 2**.

21.     To induce Plaintiff into believing that she would receive the full payment of her loan, and to further induce Plaintiff to lend additional funds to Star Management, the Debtor caused Star Management to make several monthly interests payments of $500 each to Plaintiff in 2014.  See **Exhibit 3**. Upon information and belief, and unbeknownst to Plaintiff at the time, the $3,500 of collective interest payments that Star Management caused to be paid to Plaintiff in 2014 were the product of a Ponzi Scheme.

22.     In early July 2014, the Debtor solicited Plaintiff to lend additional funds to Star Management based on the representation that the money was needed to fund the company's operations, and their promise that she would receive the same 2% monthly interest rate of return.

23.    In continued reliance upon the representations and promises of the Debtor, Plaintiff agreed to loan Star Management an additional $200,000 in early July 2014. Specifically, on July 7, 2014 Plaintiff issued two $100,000 checks made payable to Star Management, for a collective total of $200,000.  See **Exhibit 4**.  Once again, at that time the Debtor assured Plaintiff that her loan would be memorialized in a formal promissory note based on the same terms as the prior loan.

24.    Several months later, in early October 2014, the Debtor solicited Plaintiff to lend another $100,000 to Star Management based on the same previous representations and promises – the loan would be memorialized in a promissory note based on the same terms as the prior loans.

25.    In continued reliance upon the representations and promises of the Debtor, on October 2, 2014 Plaintiff issued a $100,000 check to Star Management.  See **Exhibit 5**.

26.    Thus, as of October 2, 2014 Plaintiff had loaned Star Management a total of $600,000.

27.    To induce Plaintiff into believing that she would receive the full payment of her loans, and upon information and belief to further advance their Ponzi Scheme, the Debtor caused Star Management to make approximately 8 monthly interests payments of $500 each to Plaintiff in 2015 for a total of $4,000.  See **Exhibit 5**.

28.    The Debtor took advantage of his parents' long-standing friendship with Plaintiff and his intimate knowledge about her financial status by targeting Plaintiff for his scheme at a time when she was a widower, and thus was particularly vulnerable.

29.    To induce Plaintiff to forbear from taking any legal action and to keep her at bay, which is typical of a Ponzi Scheme, throughout 2017, 2017 and 2018 the Debtor

repeatedly promised and assured Plaintiff that she would be paid back every dime of her $600,000 loans plus the 2% monthly rate of return which he had promised.

30.    Despite the continued representations and promises advanced by the Debtor, after 2015 Star Management never made another monthly payment to Plaintiff on account of her various loans. Nor did the Debtor ever present Plaintiff with additional signed promissory notes to memorialize the total $600,000 indebtedness to her.

31.    Schedule F of the Debtor's petition discloses numerous other creditors with similar claims as Plaintiff, such as April Heffering ($385,000), David Heffering ($223,000), Dionisios Liberatos ($350,000), Gayle Brust ($115,000), Jeff Schor ($425,000), Ron Manzo ($180,000), Sandra Dancer ($100,000), Sandy Gelrod ($150,000), Scott Robinson ($350,000), Jeff Smith ($90,000), Mark Mullen ($88,500) and Trond Smedshammer ($500,000).

32.    Upon information and belief, Plaintiff, the aforementioned creditors and others identified in the Debtor's bankruptcy petition are the victims of a Ponzi Scheme perpetrated by the Debtor through his corporation Star Management.

33.    Despite the substantial loans advanced by Plaintiff and the other aforementioned creditors, the only significant assets listed in the Debtor's bankruptcy petition and schedules are $2,495,500 in accounts receivable allegedly consisting of commissions that the Debtor claims he has earned.

34.    A first meeting of creditors was scheduled for and conducted on May 11, 2018 in the presence of the Court appointed Chapter 7 Trustee Karen E. Bezner.  Upon information and belief, at the creditors' meeting the Debtor was unable to explain what happened to the substantial funds loaned by Plaintiff and his other creditors.

35.     Further, upon information and belief, the Debtor has not fully cooperated with the Chapter 7 Trustee's ongoing demands for the production of certain financial records that would explain his business transactions, assets and liabilities, including the books and records of Star Management.

## FIRST COUNT
### (11 U.S.C. §523(a)(2)(A)

36.     Plaintiff repeats the allegations in paragraphs 1-35 of the Complaint as though set forth herein verbatim and at length.

37.     Upon information and belief, prior to July 2, 2014 and continuing thereafter, the Debtor began operating Star Management to advance a Ponzi Scheme with the intent to harm Plaintiff and others, who agreed to lend substantial sums to Star Management based on the Debtor's express representations and promises.

38.     The aforesaid fraud and misrepresentations of material facts made by the Debtor to Plaintiff for the purpose of inducing Plaintiff to lend a collective total of $600,000 to Star Management were done with knowledge that Plaintiff would reasonably rely upon same. Plaintiff did, in fact, reasonably rely on such misrepresentations to her detriment.

39.     At the time the Debtor made these representations to Plaintiff, the Debtor did so with full knowledge that his statements were false.

40.     Upon information and belief, the Debtor caused Plaintiff's funds and those loaned by other creditors to be transferred out of Star Management and deposited into other family businesses or otherwise depleted these funds for his own personal benefit, thereby using such funds for a purpose not disclosed to Plaintiff and without her consent.

41.     As a direct and proximate result of the wrongful actions of the Debtor and possibly other family members acting in concert with him, Plaintiff has sustained damages.

42.     The aforesaid actions by the Debtor in obtaining property from Plaintiff by means of false pretenses, false representations and actual fraud constitutes a basis to except the Debtor's debt to Plaintiff from discharge pursuant to 11 U.S.C. §523(a)(2)(A).

**WHEREFORE**, Plaintiff demands judgment against the Debtor for:

a.     Declaration that Debtor's debt constitutes a non-dischargeable debt pursuant to 11 U.S.C. §523(a)(2)(A);

b.     Fixing the amount due on the debt pursuant to 11 U.S.C. §502(b);

c.     For attorneys' fees, interest and costs of suit; and

d.     For all other relief deemed just and appropriate.

## SECOND COUNT
### (11 U.S.C. §523(a)(2)(B))

43.     Plaintiff repeats the preceding allegations in paragraphs 1-42 of the Complaint as though set forth herein verbatim and at length.

44.     In executing the promissory note on April 1, 2014, the Debtor created the false impression that Star Management was financially able to repay Plaintiff her initial $300,000 loan plus the 2% monthly return when, in fact, they never had any such intentions.

45.     Plaintiff reasonably relied on the Debtor's false written statement to her detriment.

46.     The Debtor caused such statement to be made or published with the intent to deceive Plaintiff.

47.     Upon information and belief, the Debtor, and possibly other of his family members, caused Plaintiff's funds and those loaned by other creditors to be transferred out of Star Management and deposited into other family businesses or otherwise used such funds for his own personal benefit and for a purpose not intended by Plaintiff and without her knowledge or consent.

48.     The aforesaid actions by the Debtor constitute a basis to except the Debtor's debt to Plaintiff from discharge pursuant to 11 U.S.C. §523(a)(2)(B).

**WHEREFORE**, Plaintiff demands judgment against the Debtor for:

a.      Declaration that defendant's debt constitutes a non-dischargeable debt pursuant to 11 U.S.C. §523(a)(2)(B);

b.      Fixing the amount due on the debt pursuant to 11 U.S.C. §502(b);

c.      For attorneys' fees, interest and costs of suit; and

d.      For all other relief deemed just and appropriate.

## THIRD COUNT
### (11 U.S.C. §523(a)(4)

49.     Plaintiff repeats the preceding allegations in paragraphs 1-48 of the Complaint as though set forth herein verbatim and at length.

50.     The Debtor, as a principal and President of Star Management, owed a fiduciary duty to Plaintiff and other creditors of Star Management to operate the company in the best interests of its creditors and not to knowingly and purposely cause the company to deplete its assets to benefit himself or other family members, particularly when, upon information and belief, he knew Star Management was operating a Ponzi Scheme or otherwise operating in the zone of insolvency.

51.     The Debtor breached his fiduciary duties to operate Star Management in the best of interests of its creditors, including Plaintiff, by using Plaintiff's substantial

loans in a manner other than that which was intended by Plaintiff and, upon information and belief, by withdrawing substantial sums of money for his own personal benefit and otherwise using the company as his own personal piggy bank, in the process causing the company to operate in an unlawful manner and to become insolvent and unable to pay its debt to Plaintiff.

52.    Despite knowing that Star Management was unable to pay its initial $300,000 loan to Plaintiff, upon information and belief the Debtor withdrew substantial sums of money from the company for their own personal benefit, otherwise operated the company as a Ponzi Scheme, and shortly thereafter solicited Plaintiff into lending the company an additional $300,000 knowing that Star Management would never be in a position to repay that loan or the substantial interest rates they promised her.

53.    Upon further information and belief, the Debtor further breached his fiduciary duties owed to Plaintiff by causing Plaintiff's funds and those loaned by other creditors to be transferred out of Star Management and deposited into other family businesses, a purpose not disclosed to Plaintiff and without Plaintiff's knowledge or consent.

54.    The aforesaid wrongful actions by the Debtor, and possibly other family members acting in concert thereto, constitute fraud or defalcation while acting in a fiduciary capacity, and  constitute a basis to except the Debtor's debt to Plaintiff from discharge pursuant to 11 U.S.C. §523(a)(4).

**WHEREFORE**, Plaintiff demands judgment against the Debtor for:

a.    Declaration that Debtor's debt constitutes a non-dischargeable debt pursuant to 11 U.S.C. §523(a)(4);

b.    Fixing the amount due on the debt pursuant to 11 U.S.C. §502(b);

10

c.    For attorneys' fees, interest and costs of suit; and

d.    For all other relief deemed just and appropriate.

**FOURTH COUNT**
**(11 U.S.C. §523(a)(6)**

55.    Plaintiff repeats the preceding allegations in paragraphs 1-54 of the Complaint as though set forth herein verbatim and at length.

56.    Upon information and belief, the Debtor and possibly other family members acted in concert by committing fraudulent acts that constitute a knowing and purposeful unauthorized and injurious use of Plaintiff's $600,000 that she entrusted to Debtor and his company Star Management for the express purpose of serving as a small business loan to fund Star Management's lawful operations, and for no other purpose.

57.    Upon further information and belief, the Debtor, and possibly other family members acted in concert by knowingly and purposely causing Plaintiff's $600,000 to be transferred from Star Management to other family businesses or which he otherwise used for his own personal benefit. Said acts were done without Plaintiff's knowledge or consent, thereby resulting in the Debtor exercising dominion and control over Plaintiff's funds in a manner inconsistent with the expressed purpose of the loans as was represented to Plaintiff when she agreed to advance such funds to Star Management.

58.    Upon further information and belief, the Debtor, and other family members acting in concert, otherwise solicited and used Plaintiff's funds as part of a Ponzi Scheme involving Star Management, thereby obtaining such funds by unlawful means and knowingly and purposely exercising dominion and control over such funds for unlawful purposes without Plaintiff's knowledge or consent.

11

59.     The aforesaid actions by the Debtor, possibly acting in concert with other family members, constitute willful and malicious injury to Plaintiff's property, in violation of 11 U.S.C. ¶523(a)(6).

**WHEREFORE**, Plaintiff demands judgment against the Debtor for:

      a.      Declaration that Debtor's debt constitutes a non-dischargeable debt pursuant to 11 U.S.C. §523(a)(6);

      b.      Fixing the amount due on the debt pursuant to 11 U.S.C. §502(b);

      c.      For attorneys' fees, interest and costs of suit; and

      d.      For all other relief deemed just and appropriate.

### FIFTH COUNT
### (11 U.S.C. §727(a)(3))

60.     Plaintiff repeats the preceding allegations in paragraphs 1-59 of the Complaint as though set forth herein verbatim and at length.

61.     The Debtor operated Star Management as his alter ego, seeking to shield himself from personal liability while at the same time using funds that Plaintiff and others entrusted to Star Management for personal expenses or to fund other family businesses.

62.     Upon information and belief, the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the Debtor's financial condition or business transactions might be ascertained, including the dissipation of Plaintiff's $600,000 and the substantial monies loaned by other creditors disclosed in his bankruptcy petition, and the business of Star Management.

**WHEREFORE**, by virtue of the foregoing, Plaintiff demands entry of a judgment denying the Debtor's discharge pursuant to 11 U.S.C. §727(a)(3).

## SIXTH COUNT
### (11 U.S.C. §727(a)(4)(A) and 11 U.S.C. §727(a)(4)(D))

63.    Plaintiff repeats the preceding allegations in paragraphs 1-62 of the Complaint as though set forth herein verbatim and at length.

64.    The Debtor knowingly and fraudulently, in or in connection with his bankruptcy case, made a false oath or account, in that he affirmatively represented in Schedule A of his bankruptcy petition that his only ownership interest in real estate is a modest timeshare with a $0 dollar valuation.  However, as demonstrated by the Chapter 7 Trustee's separately filed adversary action (Adv. Pro. No.: 18-1497), the Debtor engaged in a fraudulent transfer of real estate to his parents involving property in the affluent town of Alpine, New Jersey.

65.    Further, the Debtor deliberately omitted his ownership interest in Star Management when responding to question 19 of Schedule B of his bankruptcy petition. In fact, this omission conflicts with the Debtor's disclosure in question 27 of his Statement of Financial Affairs, in which he identifies Star Management as a business that he owns.

66.    Upon information and belief, the Debtor also falsified his Statement of Financial Affairs by deliberately omitting various family businesses in which he is believed to have an unrecorded ownership interest in or otherwise used to funnel money to himself disguised as loan repayments, such as Joseph Bongiorno, LLC, and Barbara Bongiorno Stable, LLC.

67.    Upon further information and belief, the Debtor has withheld from the Chapter 7 Trustee, who is an officer of the estate entitled to possession under the applicable provisions of the Bankruptcy Code, certain documents requested in the course of her investigation of the Debtor's assets and liabilities including books,

documents, records, and papers, relating to the debtor's property or financial affairs, in violation of 11 U.S.C. §727(a)(4)(D).

68.    By virtue of the Debtor's false representations and omissions, and the oath he took concerning the veracity of his submissions, and his withholding information from the Chapter 7 Trustee, the Debtor's discharge should be denied under 11 U.S.C. §§727(a)(4)(A) and (a)(4)(D).

**WHEREFORE**, by virtue of the foregoing, Plaintiff demands entry of a judgment denying the Debtor's discharge pursuant to 11 U.S.C. §§727(a)(4)(A) and (a)(4)(D).

### SEVENTH COUNT
### (11 U.S.C. §727(a)(5))

69.    Plaintiff repeats the preceding allegations in paragraphs 1-68 of the Complaint as though set forth herein verbatim and at length.

70.    The Debtor has failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet the Debtor's liabilities.  In particular, but without limitation, the Debtor has failed to explain what happened to the several million dollars in funds that he collectively borrowed from Plaintiff and the other creditors identified in Schedule F of his bankruptcy petition.

71.    By virtue of the foregoing, the Debtor's discharge should be denied under 11 U.S.C. §727(a)(5).

**WHEREFORE**, by virtue of the foregoing, Plaintiff demands entry of a judgment denying the Debtor's discharge pursuant to 11 U.S.C. §727(a)(5).

LOFARO & REISER, L.L.P.
Attorneys for Plaintiff


By:    /s/Glenn R. Reiser_____
       Glenn R. Reiser.

Dated: November 20, 2018

14

# EXHIBIT 1



Account: ▮▮▮▮▮▮▮▮
Amount: 300,000.00
PostDate: 20140326
Tran_ID: 515301766
CheckNum: 42437
DIN: 515301976
ReturnReasonDescription:
ECEItemSeqNum: 000002686003092



Account: ▮▮▮▮▮▮
Amount: 300,000.00
PostDate: 20140326
Tran_ID: 515301766
CheckNum: 42437
DIN: 515301976
ReturnReasonDescription:
ECEItemSeqNum: 000002686003092

# EXHIBIT 2

## PROMISSORY NOTE

$300,000.00                                                                                   April 1st, 2014

     FOR VALUE RECEIVED, WE, STAR MANAGEMENT OF NEW JERSEY INC., with business address at 1067 Palisade Avenue, Fort Lee, NJ 07024, promises to pay to the order of MERETE BOMMEN, with address at 701 Pequot Place Franklin Lakes, NJ 07417, the sum of THREE HUNDRED THOUSAND and no/00 ($300,000.00) DOLLARS, inclusive of interest, to be paid at the rate of TWO PERCENT PER MONTH, FIVE HUNDRED ($500.00) DOLLARS PER MONTH commencing on MAY 1st, 2014, and a like sum each and every month thereafter. Grace period shall be seven (7) days on each monthly payment. If repayment of full amount of loan is requested a written notification will be needed. The loan will then be paid back on a 36 month payment schedule. A new note will be issued at that time.

     This note may be prepaid without penalty.

     Except as set forth above, it is understood and agreed that in the event of non-payment of any one payment, the full amount then remaining unpaid shall, at the option of the holder, immediately become due and payable. The failure to assert this right shall not be deemed a waiver thereof.

     In the event this right is exercised and this note is collected by suit or the assets used to collateralize this note is foreclosed upon, the maker and endorsers herein, agree to pay, in addition to the amount due, twenty (20%) per cent of the balance due as attorney's fees, plus they shall also pay all costs and disbursements of collection.

     For value received, the undersigned, and each of them, hereby forever waives presentment, demand, protest, notice of dishonor of the within note and the undersigned and each of them guarantees the payment of said note at maturity and consent, without notice, to any and all extensions of time or terms of payment made by the holder of this note.

STAR MANAGEMENT OF NEW JERSEY INC

By: _____
ROBERT BONGIORNO, PRES.


_____
HOWARD BONGIORNO VP

# EXHIBIT 3

**M. BOMMEN**

2468

58-138/312
771

07/07/14
Date

Pay to the
Order of _Star Management of New Jersey Inc_ $ 100,000.—

_one hundred thousand & 1/100_ — Dollars

**TD Bank**

America's Most Convenient Bank®

For

2468

Account: 
Amount: 100,000.00
PostDate: 20140709
Tran_ID: 519102656
CheckNum: 2468
DIN: 519102906
ReturnReasonDescription:
ECEItemSeqNum: 000002487924791

2487924790

_Star management of N. J. Inc_

Account: 
Amount: 100,000.00
PostDate: 20140709
Tran_ID: 519102656
CheckNum: 2468
DIN: 519102906
ReturnReasonDescription:
ECEItemSeqNum: 000002487924791

M. BOMMEN

**2469**

55-136/312
771

07/07/14
Date

Pay to the
Order of  *Star Management of New Jersey Inc*  $ *100,000.—*

*one hundred thousand & no/100* ————————— Dollars

**TD Bank**

America's Most Convenient Bank®

For _____

*Mike Bommen*

⑈031201360⑈ 3450557149⑈  2469

---

Account: ████████
Amount: 100,000.00
PostDate: 20140709
Tran_ID: 519102656
CheckNum: 2469
DIN: 519102901
ReturnReasonDescription:
ECEItemSeqNum: 000002487924789

---

2487924789

Star N.J. inc to management

Account: ████████
Amount: 100,000.00
PostDate: 20140709
Tran_ID: 519102656
CheckNum: 2469
DIN: 519102901
ReturnReasonDescription:
ECEItemSeqNum: 000002487924789

# EXHIBIT 4



Account: ███████
Amount: 100,000.00
PostDate: 20141003
Tran_ID: 570956521
CheckNum: 2479
DIN: 570957046
ReturnReasonDescription:
ECEItemSeqNum: 008100779160



Account: ███████
Amount: 100,000.00
PostDate: 20141003
Tran_ID: 570956521
CheckNum: 2479
DIN: 570957046
ReturnReasonDescription:
ECEItemSeqNum: 008100779160

# EXHIBIT 5

PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.

STAR MANAGEMENT OF NEW JERSEY INC.
1067 PALISADE AVENUE
FORT LEE, NJ   07024-6329
201-969-8903

Payer's RTN (optional)

OMB No. 1545-0112

**2014**   **Interest Income**

Form **1099-INT**

**1** Interest income
$   3500.00

**Copy 2**

PAYER'S federal identification number   RECIPIENT'S identification number

**2** Early withdrawal penalty
$

**3** Interest on U.S. Savings Bonds and Treas. obligations
$

RECIPIENT'S name, Street address (including apt. no.), City or town, state or province, country, and ZIP or foreign postal code

MARIETTA BOWMAN

701 PEQUOT PLACE

FRANKLIN LAKES, NJ   07417

**4** Federal income tax withheld
$

**5** Investment expenses
$

**6** Foreign tax paid
$

**7** Foreign country or U.S. possession

**8** Tax-exempt interest
$

**9** Specified private activity bond interest
$

**10** Market discount
$

**11** Bond premium
$

To be filed with recipients state income tax return, when required.

Account number (see instructions)

**12** Tax-exempt bond CUSIP no.

**13** State   **14** State identification no.   **15** State tax withheld
$
$

Form **1099-INT**   www.irs.gov/form1099int   Department of the Treasury - Internal Revenue Service

FORM # L INT RECST

---

☐ CORRECTED (if checked)

PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.

STAR MANAGEMENT OF NEW JERSEY INC
1067 PALISADE AVENUE
FORT LEE, NJ   07024-6329
201-969-8903

Payer's RTN (optional)

OMB No. 1545-0112

**2015**

Form **1099-INT**

**1** Interest income
$   4000.00

**Interest Income**

**Copy 2**

PAYER'S federal identification number   RECIPIENT'S identification number

**2** Early withdrawal penalty
$

**3** Interest on U.S. Savings Bonds and Treas. obligations
$

RECIPIENT'S name, Street address (including apt. no.), City or town, state or province, country, and ZIP or foreign postal code

MARIETTA BOWMAN

701 PEQUOT PLACE

FRANKLIN LAKES, NJ   07417

**4** Federal income tax withheld
$

**5** Investment expenses
$

**6** Foreign tax paid
$

**7** Foreign country or U.S. possession

**8** Tax-exempt interest
$

**9** Specified private activity bond interest
$

**10** Market discount
$

**11** Bond premium
$

FATCA filing requirement ☐

To be filed with recipients state income tax return, when required.

**12**

**13** Bond premium on tax-exempt bond
$

Account number (see instructions)

**14** Tax-exempt and tax credit bond CUSIP no.

**15** State   **16** State identification no.   **17** State tax withheld
$
$

Form **1099-INT**   www.irs.gov/form1099int   Department of the Treasury - Internal Revenue Service